•May, J.
In this matter Ralph H. Lodge was adjudicated as an incompetent person. The First-Central Trust Company, under appointment, has been acting as the guardian of the estate only of this incompetent. The bank as the ward’s guardian filed its first partial account on January 22, 1932. The bank is now in liquidation. G. H. Doolittle has been appointed as the successor-guardian of the bank. The bank filed its final account on July 27, 1933 in settle *42 ment of its administration and a supplemental final account on December 6, 1983. The successor-guardian has filed exceptions, which attempt to reach alleged wrongful investments, hereinafter referred to, which investments although made in the year of 1930, are first disclosed in its first partial account filed in 1932. This, it may be noted, was advertised and approved by the court during the same month. The statement of investment is continued in its final settlement account, in part at least by the items of income derived therefrom.
The bank at the outset contends that these exceptions cannot reach the first partial account filed herein. Putting it in another way, the bank claims that since the investment is shown in the account filed in January 1932, and since no exceptions were taken thereto at the time, the items of investment made by the guardian, cannot be questioned, even though these investments may have been wholly unwarranted and unlawful, and in violation of the statutory direction given to the guardian, in respect to how the funds of a ward’s estate may be made. If this contention is correct, then even though the investments here involved, are concededly unlawful, no relief can be granted by this court and this would end the contentions of the respective parties. The court will therefore give its attention first to this question.
I.
In the case at bar here, there immediately arises the question: Upon the filing of the first partial account, who was the adversary party, the party to challenge the legality of the investment shown by the account? Here the appointment was of the estate only of the incompetent ward. Hence the proceeding is one in rem only. Surely it could not be said that the incompetent ward was the adversary party. That contention would challenge the validity of the very appointment of the guardian, itself. As a matter of fact, in a case such as this, where the ward is an incompetent person, there is no competent adversary, and the filing of the first partial account could, therefore, be no more than an ex parte proceeding. It became adversary only upon the filing of exceptions of the successor- *43 guardian. This was the first opportunity afforded for an adversary proceeding.
Some question is made as to whether the old or the new provisions of the. Code shall govern, in respect to the effect of the filing of the exceptions in the case at bar,. The old sections are 10834 and 10835, General Code. The new section is 10506-40, effective January 1, 1932. The first partial account was filed in January 1932, as hereinabove noted. The final settlement account was filed on the 27th day of July, 1933, and the supplemental final account filed on December 6, 1933.
Now in this situation, if the court thought it material, it would rule, on first impression, that the new provision would govern since both accounts were filed after January 1, 1932. The filing of exceptions relates to the adjective law, or the law of procedure only, rather than to substantive law, or the law relating to the substantive rights which are challenged by the use of the adjective law. The court thinks it immaterial as to which law, whether the old or the new, shall govern, and shall attempt to point out that the same result must follow under a proper construction of either.
The cases cited by counsel under the old section are: In re Campbell, 13 N. P. (N. S.) 386; Watts v. Watts, 38 O. S. 480 at page 492; Lambright v. Lambright, 74 O. S. 198 at 207; and In re Couden, Trustee, 9 O. App. at page 212.
In the Campbell case the parties involved were all sui juris and capable of being adversary. The. account attempted to be reached in that case was of twenty years’ standing, and if the court reads the case rightly, exceptions were not specifically directed to the partial account. This court does not consider this case as controlling, and further, even if it should so consider it controlling, it is in direct conflict with the Watts, Lambright and Couden cases, supra, if this court rightly understands these cases.
The Watts case, it is true, is not one respecting an unlawful investment. But it is one quite akin, however. The Supreme Court, by clear and emphatic language held that exceptions filed to a subsequent account did reach a former partial account.
In the Lambright case, the administrator was a son of *44 the decedent. The administrator had executed a note on which the decedent, his father, was surety for the son. The administrator was insolvent, but his distributive share of the estate more than equalled the debt. The administrator, however, paid the note out of the assets of the estate of the father, rather than out of the administrator’s distributive share, as an heir. His first account showed this fact. No exceptions were filed thereto. This account was filed in January 1899. More than two years’ later, on February 4, 1901, he filed his second account. To this account exceptions were filed. Later accounts were filed, which are not material, to which the same exceptions were saved. It was claimed that the first account, having been approved and to which there were no exceptions, was final and conclusive. It will be noticed that the matters raised by the exception, related to the wrongful application of the funds of the estate, and which could not be characterized as a mere mistake or error. On this point of finality, the Supreme Court made quick dispatch, as appears on page 207 of the opinion, where it held that it was not final and could be reached by the filing of exceptions to a subsequent account.
If this exposition and construction of the statutes made by the Supreme Court in the Watts and Lambright cases, is to be followed in this case, then the court must rule that the exceptions here in question, do reach the bank’s first partial account, and this court is bound to make inquiry into the items here challenged in that account, if the exceptions are to be construed in accordance with the adjudications and construction placed upon the old law, as it existed prior to January 1, 1932. The Couden case supra also requires this holding.
In examining the provisions of the new code Section 10506-40, the court finds that the filing and the settlement of an account is given the force and effect of a judgment, and is final. But this rule, by the express provisions of this section, itself, has its exceptions. Exception (e) withdraws from the rule “rights which are saved by statute to persons under disability.” It is not necessary to inquire as to what cases are saved to persons under disability by statute. It is sufficient to notice that if the rights of an *45 adjudicated incompetent are not saved, as in the case at bar, it is difficult to think of a case where they could be brought within this definition. Exception (e) is itself sufficient authority for holding that the first partial account, herein referred to, is not to be given the force and effect of a judgment under the new section, as against this incompetent ward, even on the assumption that the ward had been served with the “notice of hearing,” upon which this section seems to be predicated, in order even to give the settlement of a partial account the effect of a final judgment.
There is also the Exception (c), which is material. This part of the new Section 10506-40 is taken from the old Section 10835, General Code. The old section related only to executors and administrators. It was incorporated into this Section 10506-40, so as to make the section applicable to guardians and all other fiduciaries, as well as to executors and administrators. But the construction of this part' of Section 10506-40 must of necessity be the same, as when it stood as a separate section and when it applied only to executors and administrators. There is no reason apparent, by a reading of this section, or by any other section of the General Code, why a new and different construction should now be given to this language. The language of Exception (c) is changed only in so far as to cover the accounts of all fiduciaries, as hereinabove stated. A new construction is not now warranted, unless there appears to be some reason therefor.
It follows that if Exception (c) is to be construed in the same manner .as when it stood as a separate section, and when it applied only to executors and administrators, then we are taken back to the Watts, Lambright and Couden cases, hereinbefore cited, which gave, in the opinion of this court, a practical construction to this provision of the Code. The court thinks these cases hold:
First: That a partial account is deemed merely an ex parte proceeding, as distinguished from an inter partes or adversary proceeding, unless exceptions are filed thereto.
Second: That exceptions filed to a subsequent account, will reach all former accounts, which were ex parte and not made adversary by the filing of exceptions thereto.
*46 Third: That the language “to correct any mistake or error therein,” taken in connection with the further language of the section “that a matter in dispute that has been previously determined by the court shall not be brought in question by either of the parties without leave of court upon good cause first shown,” must be construed to include not merely clerical errors and mistakes contained in the former accounts, but matters of substance as well, such as the question of the lawfulness of an investment shown in such previous accounts, as is attempted here to be brought in question.
The Couden case was one of claimed unlawful investment, shown by a previous partial account, and the court there held that the matter was reached by the later exceptions. In the Watts case, as hereinabove pointed out, we do not have a case of unlawful investment, but it is sufficient to state that in that case the exception attemped to reach something quite different from a mistake or error, and the court held that the exceptions filed to a subsequent account did reach the former partial account.
If in a given case, the previous accounts, which are in their inception ex parte, are made adversary by the filing of exceptions, and the matter has been determined either by the Probate Court, or by a reviewing court on appeal from the adjudication of the Probate Court, or even by an agreement between the parties confirmed by the court, then only have they become adversary and, therefore, final, and not subject to review on the filing of exceptions to subsequent accounts, without leave first obtained.
An examination of the Watts case disclosed that on June 1, 1872, the second partial account was filed. Five years later, on May 2, 1887, the third partial account was filed, to which exceptions were filed. Under the third partial account, the balance shown by the second partial account was carried over, which item was in the sum of $2124.75. Exceptions were filed to the third partial account. (See page 482 of that case.)
The Supreme Court held that the exceptions reached this item in the second partial account of five years’ standing, by the filing of exceptions to the third partial account. It will be noted that at the time of that decision, the later *47 Sections 10834 and 10835, General Code, were combined and embraced in a single section of the Code. They were later subdivided, and in the new Code, effective January 1, 1932, they are again combined in a single section, although found in separate subdivisions thereof. Old Section 10834, General Code, is carried in the new section as Exception (b), and the old Section 10835, General Code, is carried in the new section as Exception (c). So that the construction which must now be given to these subdivisions, and especially to Exception (c), is in accordance with what is said in the Watts case.
It will be noted further that under the construction of Exceptions (b) and (c) of new Section 10506-40, General Code, made in the earlier Stayner case, 33 O. S. 481 and cited in the Watts case, either the Probate Court, or the Common Pleas Court, on appeal may open up even a former disputed partial account on the hearing of exceptions filed to the subsequent one. There is a slight change of language used, however, in the former or old section, which provided that the former disputed account could not be opened “without leave of the court”; whereas, it now provides that such former disputed account cannot be opened “without leave of court upon good cause first shown.” In the case at bar, leave to so open the former account was requested and granted.
The court thinks that this leave was wholly unnecessary, since the first partial account of the bank herein, was not brought into dispute, and leave is necessary only when the case is brought within the language of the statute, the language being “that a matter in dispute that has been previously determined by the court shall not be brought in question by either of the parties without leave of court upon good cause first shown.” In the case at bar, the matter could not have been disputed since there was no competent adversary to dispute it, and there was no previous determination of that dispute by the court, both of which are the requirements of this section.
But if the leave of the court should be deemed necessary, it is the opinion of this court, that good cause is here shown for such leave, since in the case at bar, there was no adverse party of sufficient mental capacity to challenge *48 the items of the first partial account, relating to the character of investments there shown, as hereinabove pointed out.
We have already made observation on the bank’s contention that a limited construction should be given to the language “to correct any mistake or error therein.” On reflection, if this construction shall prevail, then where in the Code is there any provision to reach, for example, a case where a fiduciary might loan monies of his ward’s estate to a financially irresponsible person on such person’s bare promissory note, and wholly without any security, in direct violation of the statute relating to guardian’s investments, and which money is thereby lost to the estate? In such a case, would the filing and approval of an account showing this unlawful investment, become a bar to subsequent inquiry, because of the fact that no exceptions had been filed thereto at the time? Shall it be said that such an account, showing so grievous a situation, shall bar remedy, as against an incompetent, because no exceptions were at the time filed thereto, and on the other hand, that items contained in the same prior account, showing but mere clerical mistakes or errors, may be opened, even though no exceptions at the time were filed thereto? Such a holding would scarcely induce honesty in the administration of estates by fiduciaries, much less induce strict compliance with the statutes relative to what investments may be made by a fiduciary, which, if followed, adequately protects the fiduciary and which, conversely, if violated ought in justice and equity to create a liability, because of the violation on the part of the fiduciary of the specific directions of the statute.
On the initial question, the court therefore comes to the conclusion that, whether reviewed from the point of view of either the old or the new sections of the General Code, the exceptions herein filed, require the court to examine the first partial account filed by the bank, and of the items therein challenged by the successor-guardian.
The court has spent considerable time on the consideration of this question, because the question arises almost daily. The construction of both the old and the new sec-tions of the General Code, as herein given, will be followed *49 by this court, until a reviewing court may establish a different construction than the one herein announced.
II.
The question confronting the court upon examining the first partial account of the guardian-bank, is as to whether the investments challenged by the exceptions are valid investments and authorized to be made by a guardian.
Here again the court is confronted by the question in respect to whether the old or the new General Code sections shall govern. The old General Code section is 10933. There are other sections which might be material, such as Section 11214, General Code, which seems to countenance other forms of investments upon approval of the court first being obtained. This approval was not shown in connection with the questioned investments here involved.
The new section is 10506-41, General Code. The old General Code Section 10933, relates only to a guardian.
The new General Code Section 10506-41 relates generally to investments on the part of all fiduciaries. .
Investments brought in question by these exceptions were made in 1930. Without extending the discussion, the court concludes that any warrant on the part of the guardian-bank to make these investments, must be governed by the law then in effect; that is, by Section 10933, General Code, and by Subdivision 7 of that section, since this subdivision is the only one which could in any wise be material. There is no need for extended discussion as to the meaning of the phrase: “Within a reasonable time after he receives it, to loan or invest the money of his ward, in notes or bonds secured by first mortgage on real estate of at least double the value of the money loaned or invested,” or of the language: “He shall also manage such investments and when deemed proper, change them into other investments of the above classes.”
Here the ward’s property orginally consisted of mortgages. They were coverted into participating trust certificates. These certificates were not directly secured by specific first mortgages on particular parcels of real estate, even though the bank’s mortgages held in trust, against which all of these participating certificates were issued, consisted solely of first mortgages.
*50 It is said that part of the total mortgages, against which these certificates were issued, were vacant and unimproved lands. This is not material, since old Section 10933, General Code, does not require the lands on which the mortgages operate, to have buildings or improvements thereon. The requirement is that if there are buildings thereon, they must be well insured against loss by fire. This is required only for the reason that, if improved by buildings, or otherwise, these buildings may be taken into consideration in estimating the value of the security and by estimating the value of the security, in fixing the maximum which may be loaned or invested against the security afforded by the value of the property; that is, the land and the buildings. It is sufficient to say that a participating trust certificate cannot be brought within the definition of the term, “notes or bonds,” as set forth in old Section 10933, General Code. Nor can the security backing these participating trust certificates, of the character herein referred to, be brought within the definition of “first mortgage on real estate,” as used in this same section. There are notes, as well as mortgages involved in the trust, against which these participating certificates are issued, but these are not held by the guardian, nor has the guardian the specific right to any of these notes and mortgages. These certificates are evidence, at best, of but the right on the part of the guardian to an equitable aliquot part, in common, with all of the other certificate owners.
Assuming that the old section should not be applied, but rather the new Section 10506-41, General Code, the court finds that the substance of the old Section 10933-7, General Code, is incorporated in Subdivision (e) of the new Code section. There is some distinction however. The notes or bonds must be secured by first mortgage on real estate, as required in the old section. The real estate must be of double the value of the total amount secured, as in the old statute. But the Legislature has taken notice of the fact that in modern practice, there occurs cases where a single mortgage secures so large a sum as to make it impossible to find a single purchaser for a single note or bond, which the mortgage secures, and that frequently notes or bonds of a different order of priority are issued against the *51 security. In such a case, a guardian may purchase such a note or bond. Before he purchases such a note or bond, however, the guardian must ascertain that the security is double the total amount secured by the mortgage; that the note or bond which he is about to purchase is one of the notes or bonds secured by such mortgage; and if more than one issue of notes or bonds is secured by such mortgage of different priority, that then the note or bond which he is about to purchase belongs to the highest and most preferred class; and further, that such note or bond which he is about to purchase, is one, of equal priority within the class itself.
From this section, it is again apparent that the mortgage referred to, is a direct mortgage to secure a direct and specific obligation evidenced by the notes or the bonds purchased for the ward. In such case, the guardian has the possession of the specified note or bond, secured by the mortgage, although he has no right to the legal or physical possession of the mortgage which secures the same. But he is still in a position, upon default of the note or the bond, to avail himself of the right of foreclosure under the mortgage, even though he does not have the physical possession of the same.
Now in a participating trust certificate, such as the one involved in the case at bar, the guardian does not receive a specific note or bond, but only a certificate, which evidences an equitable aliquot part in the total notes or bonds secured by the various mortgages held by the trust. Such an instrument is too far removed from the intent of the language used in the Code, to constitute an authorized investment.
This Section 10506-41 was amended, effective September 29, 1933, but in respects other than Subdivision (e). The new section is created so as to make but one rule of investment applicable to guardians, as well as to all other fiduciaries. This new section could not be applied to the investment here questioned, since it was enacted subsequently thereto. But if it should be applied to these questioned investments, it could require no different result, since a participating certificate, of the character here involved, can, by no stretch of the imagination, be brought *52 within the permission granted to a fiduciary. This court has no power to extend the language employed by the Legislature in this new section. The scheme involved in a participating trust certificate is not new. They are usually complicated and ordinarily not easily understood. That perhaps explains why the law was framed so as to exclude them.
These statutes are enacted for the protection of persons under disability, and for the purpose of conserving their estates and to prevent loss to such estates by preventing investments which the law does not deem safe. Any doubt in respect to the legality of a challenged investment, must be resolved in favor of the ward, for whose benefit the legislation is enacted. The participating trust certificates, here involved, neither in substance nor form, fall within the investments permitted to be made by a guardian for his incompetent ward. 'Where the statute points out the manner of investment, the guardian must bring himself within the direction thereof, and equity, under whose control the affairs of a guardian and ward fall, has always watched such investments with great jealousy, for the proper protection of the ward. Equity courts have always been regarded as agencies of the sovereign state, as parens patriae, to exercise supervision over infants, idiots, lunatics and other persons who may be incompetent, as well as over their monies and estates.
The court, therefore, concludes that the investments here challenged, were such as the guardian-bank had no right to make,.
III.
There is another matter which may be noticed. This relates to a fiduciary dealing with himself. The new Section 10506-49, General Code, now declares the rule. The enactment of this section was not necessary, since it only embodies a declaration which the courts in the State of Ohio had theretofore uniformly made. The enactment of this section, however, goes further and extends the rule to cases in which, by the terms of any instrument, creating a trust relation, the trustee is allowed to deal with himself. Such a provision in such a trust instrument is now of no validity. This section, of course, is inapplicable, except *53 that it shows that the Legislature still recognizes the rule established by equity courts, themselves, and in addition thereto, extends the doctrine which has always prevented a fiduciary from dealing with himself, in relation to the trust property, even to cases where the instrument creating the trust, permits such practice.
The rule forbidding purchase or sale of the ward’s property by the fiduciary has always been applied in this state. It applies to cases of either direct or indirect sales, and the courts have held that sales by the fiduciary to members of the fiduciary’s family, are as well included. It is not a question of good faith, or of fair price. The rule is applied not to the particular case under review, but to the mischief aimed to correct..
In the case at bar, the evidence shows that the trust department of the bank was in charge of the securities, securing the participating trust certificates. This same trust department was in charge of the estate of this incompetent ward. The ward’s mortgages were sold within this trust department, and became a part of the mortgages against which these participating trust certificates were issued. With the proceeds, this same trust department purchased for this particular ward, these participating trust certificates. These were apparently but bookkeeping transactions. The result, however, was that the separate, independent notes and mortgages of the ward, which were investments directed by statute to be made by the guardian, were substituted for the complicated and, we think, unauthorized participating trust certificates, the value of which would require the services of an expert accountant to even approximate. But even though the value is greater than the mortgages exchanged would have been, the court could not, therefore, conclude that the guardian could in this manner deal with itself. The tendency of a transaction of such a character is what the rule condemns, and this transaction is condemned by the rule. '
IV.
The remaining question is that of the relief to which the successor-guardian is entitled.
The jurisdiction of the Probate Court over the accounts of guardians is given by the Constitution, itself. *54 Article IV, Section 8, Huffman v. Fleming, 66 O. S. 148, at page 155.
Section 10501-53 (13), as a matter of procedure, now gives to the Probate Court jurisdiction to direct and control the conduct and settlement of the accounts of a fiduciary. This court is also given plenary power at law, and in equity to completely dispose of any matter properly brought before the court in the absence of a limitation or denial of such power by statute.
The court, therefore, in this case must fully determine the question here presented. This court has found the investments challenged to be unlawful. The court must, therefore, sustain the exceptions. The accounts must, therefore, charge the guardian-bank with the amounts invested in these participating trust certificates, with interest at the legal rate of six per cent, the account to be credited with any amounts received as income from these investments.
The effect of such a finding is one for money. The bank is in liquidation and money, of course, cannot therefore be forthcoming, except as to that part which may be paid in the liquidation. The court recognizes the general rule, that where there is an unlawful investment by the guardian of trust funds, an election may be made to take either the money or to take the specific property, which has resulted from the unlawful investment. If the election is made to so take the purchased property, then there is no further remedy available. Here the successor-guardian does not elect to take the property, but elects to disaffirm the investment made by the guardian-bank.
In the ordinary case, the result would be that the successor-guardian would not be entitled to hold the participating trust certificates for any purpose. However, such is not the rule in equity, and especially in respect to trusts. Equity has the power to regard the election to disaffirm, and to take what here amounts to a personal judgment and to accord further relief by way of an equitable lien upon the property in the hands of the trustee, to secure the payment of what may amount to personal finding, for a money judgment. Through such a procedure, no harm may come to either party. If the amount here involved in *55 the unlawful investment is paid, the successor - guardian would be required to relinquish the lien against these participating trust certificates. If not fully paid, the successor-guardian has a right to hold his lien against the security, until the amount due to him shall have been paid.
The general rule is stated in 65 C. J. page 981, and the ■authorities there cited. This court, sitting as a court of equity, is required to invoke all of its equitable powers for the protection of this incompetent ward. The court perhaps is required to make the election for the ward, and to make that election in such a manner as may be most advantageous to the ward. The court is of the opinion that for the more full and complete protection of the ward in this action, it can, and must accord, in addition to ordering the correction of its accounts, as hereinabove stated, an equitable lien on these participating trust certificates, to secure the repayment of as much as possible of the funds of the ward, which have been diverted by reason of the unauthorized investment on the part of the guardian-bank.
Counsel may prepare and present to the court the appropriate journal entry, covering the findings herein made in this opinion.